**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-1849-WJM

CYNTHIA QUINTERO,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

    Defendant.

---

**ORDER AFFIRMING ADMINISTRATIVE LAW JUDGE'S DECISION**

---

    This social security benefits appeal is before the Court under 42 U.S.C. § 405(g). Plaintiff Cynthia Quintero ("Plaintiff") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits and supplemental security income. The denial was affirmed by an Administrative Law Judge ("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). This appeal followed.

    For the reasons set forth below, the ALJ's decision denying Plaintiff's application for Social Security disability benefits and supplemental security income is AFFIRMED.

## I.  BACKGROUND

    Plaintiff was born on October 24, 1963, and was 45 years old on the alleged disability onset date. (Admin. Record ("R.") (ECF No. 9) at 16.) Plaintiff has at least a high school education and has past relevant work experience as a cashier, waitress,

and motel manager. (R. at 15-16.)

Plaintiff filed an application for a period of disability and disability insurance benefits and for supplemental security income on March 12, 2009, alleging that she had been disabled since February 7, 2009 due to several physical impairments[1] as well as depression. (R. at 10.) Plaintiff's application was initially denied on May 28, 2009. (R. at 8.) After timely requesting a hearing on June 24, 2009, Plaintiff's claims were heard by ALJ Kathryn D. Burgchardt in a video hearing on November 4, 2010. (*Id.*) Plaintiff and vocational expert Nora W. Dunne testified at the administrative hearing. (*Id.*) Medical evidence and opinions on Plaintiff's mental impairment were provided by examining psychologists Jose Vega, Ph.D., and Brett Valette, Ph.D., and non-examining state agency psychologist MaryAnn Wharry, Psy.D. (R. at 15, 430.)

On February 10, 2011, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[2] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 7, 2009, the alleged onset date. (R. at 10.) At step two, she found that Plaintiff suffered from multiple severe impairments, including depression. (*Id.*) At step three, the ALJ found

---

[1] As Plaintiff has not challenged the ALJ's findings and conclusions with regard to Plaintiff's physical impairments, the Court will discuss only those facts relevant to Plaintiff's mental impairment, the issue before it in this appeal. (*See* ECF No. 12 at 6.)

[2] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.) The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

that Plaintiff's depression, while a severe impairment, did not meet or equal any of the impairments or combination of impairments listed in the social security regulations. (R. at 11.)  The ALJ assessed Plaintiff's residual functional capacity ("RFC"), finding that she had the physical RFC to perform "light" work as defined by the regulations, except that she would be limited in numerous physical tasks. (R. at 12.)  The ALJ found that with regard to Plaintiff's mental RFC, she would also be limited to "simple, unskilled work" with a specific vocational preparation of one or two; should not work in close proximity to coworkers, meaning that she could not function as a member of a team; and should have minimal direct contact with the public. (*Id.*)  Given this RFC, at step four, the ALJ found that Plaintiff could not perform her past relevant work as a cashier, waitress, or motel manager. (R. at 15.)  However, at step five, the ALJ found that Plaintiff was capable of performing other work in the national economy, including work as a retail marker, parking lot signaler, and vending machine operator. (R. at 16-17.)  Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act and therefore was not entitled to benefits. (R. at 17.)

The Appeals Council denied Plaintiff's request for review on May 21, 2012. (R. at 1-3.)  Thus, the ALJ's February 10, 2011 decision is the final administrative action for purposes of review.

## II.  STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  ANALYSIS

On appeal, Plaintiff challenges the ALJ's evaluation of the medical opinions in the formulation of her mental RFC, contending that the ALJ failed to consider and properly weigh the opinions of Dr. Vega, Dr. Valette, and Dr. Wharry. (ECF No. 12 at 6.)

An ALJ's weighing of a medical opinion depends upon numerous factors. The opinion of a treating physician is generally entitled to controlling weight as long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques," and "consistent with other substantial evidence in the record." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing 20 C.F.R. §§ 404.1527, 416.927). If a medical opinion does not merit controlling weight, the ALJ must determine what weight the opinion deserves by considering six factors, including the length, nature, and extent of the treatment relationship, the physician's specialization, and the consistency between

the physician's opinion and the record as a whole. *Id.* at 1301. The ALJ need not explicitly discuss each individual factor, as not every factor will apply in every case. *See Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007). However, the ALJ must consider all the medical opinions in the record when formulating the RFC. 20 C.F.R. § 404.1527(c).

Plaintiff makes three arguments that the ALJ erred in considering Plaintiff's mental impairment: (1) the ALJ failed to provide proper reasons for discounting Dr. Vega's opinion, and failed to explain why Dr. Vega's restrictions were not incorporated into the mental RFC; (2) the ALJ failed to explain why Dr. Valette's opinion was given great weight; and (3) the ALJ failed to discuss Dr. Wharry's opinion, despite the fact that the RFC's similarity to the opinion suggests the ALJ gave it great weight. (ECF No. 12 at 10-19.) The Court will discuss each argument in turn.

**A.     Dr. Vega**

With regard to Dr. Vega, Plaintiff first argues that the ALJ's stated reasons for discounting parts of Dr. Vega's opinion were improper, and that the ALJ's decision to reduce the weight given to his opinion was not supported by substantial evidence. (ECF No. 12 at 12-15.) Although Plaintiff concedes that it was appropriate for the ALJ to reject Dr. Vega's "Med-9" forms, which were prepared for a Colorado state disability benefits determination, Plaintiff argues that the ALJ had no valid reason for giving little weight to his RFC assessment. (*Id.* at 12-13.)

The ALJ correctly stated that the weight she gave to Dr. Vega's opinion was not controlling, as he was not a treating source. (R. at 15.) However, the ALJ then stated

that the documents comprising Dr. Vega's opinions "were prepared at the behest of claimant's counsel in anticipation of this hearing, which also supported the finding that these assessments were entitled to little, if any, weight". (R. at 15.) Finally, the ALJ stated that "to the extent that Dr. Vega's assessment was consistent with that of the independent consultative examiner [Dr. Valette], his assessment was given great weight." (*Id.*)

The Court agrees with Plaintiff that it is inappropriate for an ALJ to discount a medical opinion solely because it was prepared at the request of Plaintiff's counsel and in anticipation of litigation. An ALJ may properly discount an opinion because, *e.g.*, it is unsupported by medical findings and tests, it is inconsistent with other evidence in the record, or it was issued by a physician who was unfamiliar with the claimant's history or other evidence in the record. 20 C.F.R. § 404.1527(c)(3)-(6). Such findings may be true of an opinion that was prepared for legal purposes to support a plaintiff's claim, rather than for purely medical purposes.

However, the regulations do not contemplate discounting opinions solely because they were prepared for advocacy purposes; rather, the decision to discount an opinion must result from weighing the factors described in the regulations. *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) (holding that "the ALJ's assertion that a family doctor naturally advocates his patient's cause" is not good cause to reject his opinion) (internal quotation marks omitted); *McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002) (citing *Frey* and finding that "the ALJ's rejection of Dr. Luc's assessment on the basis of advocacy is a mere 'conclusory statement'" unsupported by

considering the requisite factors). Therefore, the ALJ erred to the extent that she discounted Dr. Vega's opinion solely because it was prepared for litigation.

However, on a close reading of the ALJ's decision, it is apparent that the advocacy nature of Dr. Vega's opinion was not the primary reason the ALJ diminished the weight it was assigned. Rather, the ALJ stated only that it "supported the finding" that Dr. Vega's opinion merited little weight. (R. at 15.) Additionally, the ALJ found Dr. Vega's opinion deserving of "great weight" to the extent that it was consistent with Dr. Valette's opinion. (*Id.*) Upon review of the opinions at issue, the Court finds that Dr. Vega and Dr. Valette generally agree in the narrative portion of their opinions, and it is principally in the severity of the limitations in Dr. Vega's RFC evaluation where his opinion diverges from Dr. Valette's. (*See* R. at 468-69.) Therefore, because it was consistent with Dr. Valette's opinion, the majority of Dr. Vega's opinion was given great weight by the ALJ. (*Id.* at 15.) Insofar as the ALJ evaluated Dr. Vega's opinion based upon its consistency with other medical evidence, she properly weighed the opinion. *See* 20 C.F.R. § 404.1527(c)(4). Because substantial evidence supports the granting of great weight to the parts of Dr. Vega's opinion that were consistent with the record, and discounting the other parts, the ALJ's weighing of Dr. Vega's opinion was not reversible error.

This analysis explains why the ALJ did not incorporate Dr. Vega's assessment of Plaintiff's RFC into the decision. Plaintiff argues that the ALJ erred in failing to include Dr. Vega's restrictions, citing the Tenth Circuit in holding that it is improper for the ALJ to "pick and choose through an uncontradicted medical opinion, taking only the parts

that are favorable to a finding of nondisability." *Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) (internal quotation marks omitted); (ECF No. 12 at 17 (citing *Chapo*)). Plaintiff's argument is inapposite where, as here, the ALJ is not faced with "an uncontradicted medical opinion." *See id.* The ALJ's decision gave great weight to the parts of the opinions of Dr. Vega and Dr. Valette that were consistent with each other, which did not include Dr. Vega's RFC form. (*See* R. at 468-69.) The ALJ had discretion to reject that part of Dr. Vega's opinion, or, as she appeared to do, moderate the restrictions therein to align more closely with the other medical evidence. (*See* R. at 12.) Thus, given the ALJ's weighing of the opinions, the decision not to fully incorporate Dr. Vega's assessment of Plaintiff's limitations into the RFC was reasonable.

In sum, the Court finds that although one of the ALJ's stated reasons for discounting Dr. Vega's opinion was in error, that error was harmless because substantial evidence supported the ALJ's weighing of Dr. Vega's opinion.

**B.     Dr. Valette**

Plaintiff also contends that the ALJ failed to explain why she assigned great weight to Dr. Valette's opinion. (ECF No. 12 at 11-12.) Because Dr. Vega and Dr. Valette were both examining providers with the same specialty, Plaintiff argues that they were presumptively entitled to the same weight, and the ALJ did not discuss the reasons for prizing the opinion of Dr. Valette over that of Dr. Vega. (*Id.*)

The Court agrees that "the ALJ must give good reasons in the notice of determination or decision for the weight [s]he ultimately assigns the opinion." *Watkins*, 350 F.3d at 1301. The ALJ erred in that her decision did not discuss the reasons for the

weight she gave to Dr. Valette's opinion. (R. at 15.) That failure was error.

However, it is apparent from the ALJ's discussion of Dr. Vega's opinion that the ALJ gave great weight to the consistent parts of both Dr. Vega's and Dr. Valette's opinions. (*Id.*) Although Plaintiff argues that Dr. Valette's opinion was prized above Dr. Vega's, upon review of the record, the Court finds that Dr. Valette's opinion and Dr. Vega's opinion generally agree. (*See* R. at 426-29, 468-73.) It appears that rather than elevating the weight of Dr. Valette's opinion, the ALJ simply valued it above Dr. Vega's because Dr. Vega's opinion was discounted for the reasons discussed above. Therefore, although the ALJ should have discussed the reasons for giving Dr. Valette's opinion great weight, the Court finds that substantial evidence supports such a determination, and the opinion was consistent with the record as a whole. *See also Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("When the ALJ does not need to reject or weigh evidence unfavorably . . . the need for express analysis is weakened.").

Accordingly, the Court finds that the ALJ's error in failing to discuss the reasons for giving great weight to Dr. Valette's opinion was harmless.

**C.   Dr. Wharry**

Plaintiff argues that the ALJ erred in failing to discuss the opinion of Dr. Wharry, a non-examining State agency psychologist, because it appears from the formulation of the RFC that the ALJ relied upon her opinion. (ECF No. 12 at 18.)

An ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or

other medical specialist, as [she] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources." 20 C.F.R. § 416.927(e)(2)(ii). "If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 416.927(e)(2)(ii)).

Nevertheless, the Tenth Circuit has found that an ALJ's failure to assign a specific weight to a consulting examiner's opinion was harmless error, because the opinion was not inconsistent with the other evidence of record or with the ALJ's RFC findings. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (finding that failure to explicitly weigh an examining opinion was harmless error because "[t]here is no reason to believe that a further analysis or weighing of this opinion could advance [the plaintiff]'s claim of disability.").

In the instant case, the ALJ's decision neither mentioned nor weighed Dr. Wharry's opinion. (*See* R. at 15.) As with Dr. Valette's opinion, the ALJ's failure to discuss or weigh this medical opinion was error. *See* 20 C.F.R. § 416.927(e)(2)(ii). Thus, the Court must determine whether the error was harmless, or whether it requires reversal.

As a non-examining consulting psychologist, Dr. Wharry's opinion of Plaintiff's mental RFC was formulated based upon the other documentation in the record. Accordingly, it is unsurprising that Dr. Wharry's opinion is generally consistent with the opinions of Dr. Valette and Dr. Vega. (*See* R. at 426-29, 444-47, 468-73.) However, Dr. Wharry's evaluation of Plaintiff's limitations in her RFC assessment form differs from

Dr. Vega's.[3]  (*Compare* R. at 426-29 *with* 468-69.)  Where Dr. Wharry notes that Plaintiff is "moderately limited" in the ability to understand, remember, and carry out detailed instructions, to maintain attention and concentration for extended periods, and to complete a normal workday and workweek at a consistent pace, Dr. Vega notes "moderate to marked" limitations in these areas, as well as in several others.  (*Id.*)  The RFC form Dr. Vega used states that a "moderate" limitation indicates the claimant is "still able to function," while a "marked" limitation means that "[t]he ability to function in this area is severely limited but not precluded."  (R. at 468.)  Thus, although there are consistencies with regard to the types of limitations noted by the two doctors, there is a difference between the two opinions in the limitations' severity.

Plaintiff argues that, because the ALJ's evaluation of Plaintiff's limitations in maintaining concentration, persistence and pace were "strikingly similar" to Dr. Wharry's RFC assessment, and both Dr. Wharry and the ALJ limited Plaintiff to "simple" work, the ALJ must have "closely followed" Dr. Wharry's opinions.  (ECF No. 12 at 18.)  The Court agrees that the concentration, persistence and pace restrictions in the ALJ's RFC all appear among the "moderate" limitations Dr. Wharry recommended, while not all the "moderate to marked" limitations in Dr. Vega's opinion were adopted.  (*See* R. at 12, 444-45, 468-69.)  However, while Dr. Wharry found no limitations in social functioning,

---

[3] Dr. Valette did not prepare an RFC form.  *See* 426-29.  Plaintiff argues that this reveals the ALJ's failure to properly assess the evidence, because the ALJ's decision notes that Dr. Valette's "suggested restrictions were incorporated into the [RFC] assessment".  (R. at 15.)  Plaintiff contends that "Dr. Valette did not even offer any restrictions."  (ECF No. 12 at 16.)  However, while Dr. Valette did not list specific employment limitations, he did discuss Plaintiff's ability to function in his opinion, despite not filling out an RFC form.  (R. at 429.)  Thus, the Court finds Plaintiff's argument on this point unpersuasive.

11

the ALJ did include limitations on Plaintiff's ability to interact with the public and with coworkers in the RFC.  (R. at 12.)

Although Plaintiff encourages the Court to assume that the ALJ relied upon Dr. Wharry's opinion in formulating the RFC, the Court need not make such a guess, because the ALJ explicitly stated in her decision that she incorporated restrictions "in the areas of social functioning and concentration, persistence and pace" based upon the opinions of Dr. Vega and Dr. Valette.  (R. at 15.)  Further, the ALJ stated that she incorporated the suggestions of Dr. Valette into the RFC assessment.  (*Id.*)  The similarity between the RFC and Dr. Wharry's opinion is not so striking as to cast doubt upon the veracity of the ALJ's explanation of her decision.  Thus, the Court finds that the ALJ did not rely upon Dr. Wharry's opinion in formulating the RFC.  Rather, it is more reasonable to interpret the ALJ's reduction of the severity of Dr. Vega's restrictions as a discretionary determination, based upon her decision to give great weight to Dr. Valette's opinion, and to discount the weight of Dr. Vega's RFC assessment in light of the other evidence in the record.

Further, the Court finds Dr. Wharry's opinion generally consistent with the opinions of Dr. Vega and Dr. Valette, except to the extent that Dr. Wharry listed less severe restrictions in her RFC assessment than did Dr. Vega.  A reduction of severity of restrictions would not benefit Plaintiff's claim.  Thus, because "[t]here is no reason to believe that a further analysis or weighing of this opinion could advance [Plaintiff]'s claim of disability," the Court finds that the ALJ's failure to discuss and weigh Dr. Wharry's opinion was harmless.  *See Keyes-Zachary*, 695 F.3d at 1163.

In conclusion, despite finding errors in the analysis—or lack thereof—of the opinions of Dr. Vega, Dr. Valette, and Dr. Wharry, the Court finds that "more than a scintilla" of evidence exists to support the ALJ's evaluation of Plaintiff's mental RFC, and that evidence was not overwhelmed by contrary evidence.  *See Lax*, 489 F.3d at 1084.  As there is sufficient evidence in the record to support the ALJ's determination, the Court must defer to the ALJ's evaluation of the evidence and may not reweigh it in her place.  *See Salazar*, 468 F.3d at 621.  Accordingly, the Court finds that the ALJ's errors were harmless and her decision was supported by substantial evidence in the record.  *Id.*

### III.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED.

Dated this 2nd day of August, 2013.

BY THE COURT:

_____
William J. Martínez
United States District Judge